# McPhillips, Shinbaum & Gill, L.L.P.

### ATTORNEYS AND COUNSELORS AT LAW
516 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 262-1911
FAX (334) 263-2321

Julian L. McPhillips, Jr.*
Kenneth Shinbaum
G. William Gill
Mary Goldthwaite

Karen Sampson Rodgers
Aaron J. Luck
James G. Bodin
Joseph C. Guillot

Mailing Address
Post Office Box 64
Montgomery, Alabama 36101

*Also Admitted
in New York

April 20, 2004

Retirement Plan Committee
Dana Corporation
Post Office Box 433
Toledo, Ohio 43697

Lisa Amend, Esq.
Legal Counsel
Dana Corporation
Post Office Box 1000
Toledo, Ohio 43697

Dear Ms. Amend and Sirs:

Mr. Ron Hancock has retained us to represent him with respect to the disability retirement and health benefits that he is entitled to from Dana Corporation.

I enclose for your benefit a copy of the case of Varity Corporation v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) which is applicable in the present case because Dana Corporation appears to have violated its fiduciary obligations.

In the present case, Mr. Hancock's disability began while he was employed at Dana Corporation. He was on short-term disability with Dana Corporation and he has been disabled ever since. Further, Mr. Hancock was never able, physically, to return to work for Dana Corporation or Standard Motor Products. Dana Corporation told Mr. Hancock that if he did not sign the forms for Standard Motor Products he would lose all his benefits. He was further told that the benefits from Standard Motor Products were as good or better. Both of these representations by Dana Corporation were untrue.

Further, Mr. Hancock is entitled to long-term disability because the disability which prevents him from performing any and every duty of an occupation or employment for which he was reasonably qualified by education, training or experience, began when he was employed by Dana Corporation and he has not physically returned to work since that time.

Retirement Plan Committee
Lisa Amend, Esq.
April 20, 2004
Page Two


We therefore request that Mr. Hancock's long-term disability benefits start immediately with back payments to which he is entitled. Further, Mr. Hancock requests the medical/health insurance benefits to which he is entitled.

Please let us hear from you within 10 days on this matter.

Sincerely,

Kenneth Shinbaum


KS/sc
Enclosure
cc:    Mr. Ron Hancock

# SHUMAKER, LOOP & KENDRICK, LLP

NORTH COURTHOUSE SQUARE
1000 JACKSON
TOLEDO, OHIO 43624-1573
TELEPHONE (419) 241-9000
FAX (419) 241-6894

ERIC D. BRITTON
(419) 321-1348
ebritton@slk-law.com

OTHER OFFICE LOCATIONS:
CHARLOTTE
COLUMBUS
TAMPA

May 4, 2004

Kenneth Shinbaum, Esq.
McPhillips, Shinbaum & Gill. LLP
516 South Perry Street
Montgomery, Alabama 36104

Re:    Dana Corporation – Ron Hancock
Our File No. 44143/105

Dear Mr. Shinbaum:

Dana Corporation has asked me to respond to your letter dated April 20, 2004 to the Dana Retirement Plan Committee, relating to the disability and health benefits your client, Ron Hancock, would like to receive from Dana Corporation employee benefit plans.

You assert that Mr. Hancock is entitled to long-term disability benefits from Dana, as well as group health coverage under Dana's group health plan, because Dana allegedly violated some fiduciary duties to Mr. Hancock. You claim misrepresentations were made to Mr. Hancock about his future benefits at the time Dana sold its Engine Management Group to Standard Motor Products ("SMP") in 2003, and, in particular, rely on statements that (a) if Mr. Hancock did not sign the enrollment forms for SMP's employee benefit plans, he would lose his benefit coverage, and (b) that his benefits from SMP would be as good or better than Dana's benefits. After reviewing the facts, Dana believes that the Varity Corporation v. Howe case you cited is not relevant, that there was no breach of fiduciary duty by Dana, and that your position is not supportable.

Mr. Hancock was employed by Dana and receiving short-term disability benefits from Dana at the time Dana sold its Engine Management Group to Standard Motor Products on June 30, 2003. Pursuant to the terms of the purchase agreement between Dana and SMP, Mr. Hancock was terminated by Dana and hired by SMP, effective July 1, 2003. The terms of this purchase agreement specifically provided that all employees of Dana's Engine Management Group, including employees such as Mr. Hancock who were on disability leaves or other leaves of absence on June 30, 2003, would be terminated by Dana and offered employment by SMP following the sale. The agreement also mandated that coverage under Dana's welfare benefit plans for the transferring employees would terminate, and that SMP would begin providing their disability and medical coverage under its own welfare benefit plans beginning on July 1, 2003.

Kenneth Shinbaum, Esq.
May 4, 2004
Page 2

Mr. Hancock was therefore asked to complete the various benefit application forms necessary to obtain coverage under SMP's employee benefit plans by July 1, to make sure he was covered by SMP plans.

Contrary to your letter, Dana did not tell employees of the Engine Management Group that the SMP disability or health benefits were as good as the equivalent Dana benefit plans. In fact, Dana and its Human Resources staff went to considerable effort to avoid making any commitments about the SMP benefit programs. Instead, the employee presentations to Engine Management Group employees explaining the SMP benefit programs were all presented by Sanford Kay, SMP's Vice President of Human Resources or his staff, *not* by Dana staff, and SMP was responsible for preparing the written materials circulated to explain these plans. Further, the written materials Dana distributed describing the impact on Dana benefits plans expressly referred employees to SMP for information about the SMP benefit programs. Dana therefore did not make any material representations to Mr. Hancock about SMP's benefit programs, and certainly did not assume a fiduciary role in explaining his options to him.

Mr. Hancock was asked to complete the various benefit enrollment forms for SMP's employee benefit plans before the closing, but this was done to ensure that he would have coverage under the SMP's plans after his employment with Dana (and coverage under Dana benefit plans) terminated on June 30, 2003. If Mr. Hancock had refused employment with SMP or declined to enroll in SMP's benefit plans, his employment with Dana would still have been terminated at the same time, as his entire division was sold. He had no option to continue employment with Dana after that date, or to continue his benefit coverage from Dana (other than by electing to purchase COBRA continuation health coverage).

Dana was not acting as a fiduciary of any ERISA plan when Mr. Hancock's employment with Dana was terminated, when SMP provided him with information about SMP's benefit plans, or when he was enrolled in SMP's benefit plans. The Varity case you cited does not change this result. This case would apply only if Dana had made detailed affirmative statements to Mr. Hancock about his options, knowing he would rely on them, and failed to provide accurate information. Note that that case involved an extensive campaign by the prior employer to persuade employees to accept voluntary transfers to the successor employer. In this case, on the other hand, the transfers were not optional, employees had no choice to remain with Dana, and Dana took careful steps to avoid assuming this role, and made few (if any) statements about SMP's benefit programs. In fact, Dana encouraged employees to rely only on SMP for information about their future benefits.

In conclusion, Dana has reviewed the claims you asserted on behalf of Mr. Hancock, and has found that it breached no fiduciary duty to Mr. Hancock in connection with the sale of the Engine Management Group to SMP. Dana therefore does not agree that Mr. Hancock has any entitlement to continued participation in Dana's long-term disability or group health plans.

Kenneth Shinbaum, Esq.
May 4, 2004
Page 3


Please let us know if you have any questions about this.

Very truly yours,

ERIC D. BRITTON, ESQ.

Eric D. Britton


EDB/trm
cc:     L. Amend, Dana Law Department
        R. Arquette, Dana Benefits
        R. Prebe, Dana Benefits

**DANA** **BENEFITS AND PAYROLL SERVICES**

Ron Hancock
7073 Narrow Lane Road
Montgomery, AL 36116

Dear Mr. Hancock,

We have reviewed your claims to be eligible for long-term disability benefits from Dana's Long-term Disability Benefits Plan, as asserted by your attorney in correspondence sent to Dana on your behalf. Dana is rejecting this claim. This letter will explain why.

Your claim for disability benefits is being rejected because (I) your employment with Dana terminated with the sale of the Engine Management Group to Standard Motor Products on July 1, 2003, before you qualified for long-term disability benefits; (II) the agreement negotiated between Dana and Standard Motor Products covering this sale provided that Standard Motor Products would be responsible for providing your welfare benefits after July 1, 2003; and (III) Dana has never received an application for long-term disability benefits from you.

This decision is based on the terms of Dana's Long-term Disability Benefits Plan. Under Section 6(a) of this Plan, eligibility ends at the termination of employment with Dana:

> "An Eligible Employee's eligibility for the long-term disability benefits provided under this Plan shall automatically cease on the date of termination of employment. ...[I]n the case of an Employee's absence from active work because of sickness or injury, his employment may, for purposes of his long term disability benefits, be deemed to continue until terminated by Dana, or until he retires. In the case of the above exceptions, long-term disability benefits for such Eligible Employee shall automatically cease on the date such termination of his employment by Dana occurs, or on the date he retires."

If you wish to appeal this denial, you have the right to have this decision reviewed by Dana Corporation Welfare Plans Committee. To appeal, send a written statement of your position to the attention of the Welfare Plans Committee, in care of Ron Prebe at P.O. Box 433, Toledo, Ohio, 43697. You have up to 180 days – that is, no later than March 1, 2005 – to submit a written statement explaining why you claim should not be denied and any documentation or other evidence to support your appeal. Ordinarily, a decision will be returned to you in writing no later than 60 days after review of your claim. You may not file a legal action on your claim for benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, until have you exhausted your rights to appeal under the Plan and your appeal is denied upon review.

Sincerely,

*Chuck Fish*

Chuck Fish
Long-term Disability Manager

*People Finding A Better Way*

**BENEFITS AND PAYROLL SERVICES, DANA** CORPORATION
P.O. BOX 433, TOLEDO, OHIO 43697 TEL: (419) 482-1600 FAX: (419) 482-1833
www.dana.com

# McPhillips, Shinbaum & Gill, L.L.P.

ATTORNEYS AND COUNSELORS AT LAW
516 SOUTH PERRY STREET
MONTGOMERY, ALABAMA 36104

TELEPHONE (334) 262-1911
FAX (334) 263-2321

Julian L. McPhillips, Jr.*
Kenneth Shinbaum
G. William Gill
Mary Goldthwaite

Karen Sampson Rodgers
Aaron J. Luck
James G. Bodin
Joseph C. Guillot

Mailing Address
Post Office Box 64
Montgomery, Alabama 36101

*Also Admitted
in New York

September 13, 2004

**VIA CERTIFIED MAIL -**
**RETURN RECEIPT REQUESTED**
Dana Corporation Welfare Plans Committee
c/o Mr. Ron Prebe
Post Office Box 433
Toledo, Ohio 43697

Re:    Appeal of Denial of Long-Term Disability from Dana Corporation's Long-Term Disability Benefits Plan

Dear Sirs:

This letter is to inform you that Mr. Ronald Hancock is appealing Dana Corporation's denial of his claim for disability retirement benefits and health benefits.

Mr. Hancock's position is that he became disabled within the meaning of Dana Corporation's Disability Plan on or about May 28, 2003. On or about May 28, 2003, Mr. Hancock contacted by telephone Joan Martin, who was the Claims and Benefits Coordinator for Dana Corporation's benefit plans for the division in which Mr. Ronald Hancock worked. Mr. Ronald Hancock informed Ms. Martin that he needed to apply for long-term disability benefits, and Ms. Martin replied she would send Mr. Hancock the necessary paperwork to fill out.

Ms. Martin did in fact send Mr. Hancock forms to apply for disability which he filled out, had his physician to fill out, and submitted on or about June 10, 2003. (A copy of which is hereto attached.)

Thereafter, Mr. Hancock began receiving disability benefits retroactive to May 28, 2003. After May 28, 2003, Mr. Hancock was not able to return to active work because of his disability.

In pages 6, 7 and 8, of the claims and appeal procedures which Eric Britton, of Shamaker, Loop & Kendrick, LLP, provided to us in his letter of August 31, 2004, Section 9(a) provides as follows:

Dana Corporation Welfare Plans Committee
September 13, 2004
Page 2

### Section 9.  Processing Claims for Benefits

(a)     Written notice of injury or sickness on which a claim
        may be based must be given to the Administrator within
        six (6) months after the date of commencement of
        disability resulting from such injury or sickness.  Proof
        of such injury or sickness must be furnished to the Plan
        Administrator no later than ninety (90) days after the
        commencement of the period for which Monthly
        Benefits are payable hereunder.

        Upon receipt of the notice required by this Plan, the
        Administrator will furnish forms for filing proofs of claim.
        If such forms are not received by the claimant within
        fifteen (15) days after the Administrator receives such
        notice, the claimant shall be deemed to have complied
        with the requirements of this Plan as to proof of claim
        upon submitting, within the time fixed in this Plan for
        filing proofs of claim, written proof covering the
        occurrence, character and extent of the disability for
        which claim is made.

        Failure to furnish notice or proof within the time
        provided in this Plan shall not invalidate or reduce any
        claim if it shall be shown not to have been reasonably
        possible to furnish such notice or proof and that such
        notice or proof was furnished as soon as was
        reasonably possible.

Mr. Hancock did in fact submit written notice of his injury or sickness on which his
claim is based to the Administrator within six (6) months after the date of commencement
of his disability resulting from such injury or sickness.  Mr. Hancock submitted this written
notice on or about June 10, 2003.  Further, on or about June 10, 2003, Mr. Hancock
submitted proof of such injury or sickness to the Plan Administrator which was within 90
days after the commencement of the period for which monthly benefits are payable.

Mr. Hancock filled out and submitted all forms which the Administrator furnished
him.  Therefore, under Section 9(a), Mr. Hancock timely made his application for benefits
while he was still employed by Dana Corporation.

Dana Corporation Welfare Plans Committee
September 13, 2004
Page 3

Also enclosed for your information are physician statements from Dr. David Morrison and Dr. Charles Cloutier, who both state that Mr. Hancock became disabled as of May 28, 2003 and who both state that there is no reasonable probability that Mr. Hancock's disabled condition will ever improve.

It is for the above reasons that Mr. Hancock is entitled to his long-term disability benefits from Dana Corporation and that he is also entitled to the health insurance benefits which an employee of Dana Corporation is entitled to in the event they receive long-term disability benefits.

Sincerely,

Kenneth Shinbaum
Attorney for Mr. Ronald Hancock

KS/sc
Enclosures
xc:    Mr. Ronald Hancock

 **DANA**

## APPLICATION FOR SHORT-TERM DISABILITY BENEFITS

This Application for Short-Term Disability Benefits has three parts that must be completed - the Employee portion, the Employer portion, and the Attending Physician portion. You are responsible for completing all questions under Section ❶. Your local Human Resources Representative is responsible for completing all questions under Section ❷. Your physician is responsible for completing all questions under Section ❸. Once all three sections have been completed, return this form to your Human Resources Representative.

Failure to fully answer all questions may delay the processing of your claim. If you need assistance in completing the form, please contact your Human Resources Representative.

## SECTION ❶:   TO BE COMPLETED BY THE EMPLOYEE:

| 1. EMPLOYEE NAME    LAST      FIRST      M.I. | CHECK ONE | SOCIAL SECURITY NUMBER |
|---|---|---|
| HANcock    RonAld    I. | MALE ☒ FEMALE ☐ | 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 |

| 2. DATE OF BIRTH | ARE YOU MARRIED? YES ☒  NO ☐ | NUMBER OF CHILDREN DEPENDENT UPON YOU FOR SUPPORT   0 | TELEPHONE NUMBER (WITH AREA CODE) |
|---|---|---|---|
| 11-17-43 | | | 334-281-7926 |

**3. CURRENT ADDRESS**       CITY       STATE       ZIP

7073 NARROW LANe Rd., MontGomery, AL    36116

### DISABILITY DATA

| 4. DATE FIRST TOTALLY DISABLED | WERE YOU HOSPITALIZED AS A BED PATIENT? | HOSPITAL ADMISSION DATE | HOSPITAL DISCHARGE DATE |
|---|---|---|---|
| 4-9-1999 | YES ☒ NO ☐ | 4-9-1999 | 4-19-1999 |

**5. NAME / ADDRESS OF HOSPITAL**

UAB - B'HAM ALAb AmA

**6. NAME / ADDRESS OF PHYSICIAN**

DAvid G. MORRiSoN, MD Ph.D.

| 7. WAS AN ACCIDENT INVOLVED?    YES ☐ NO ☒ | WAS THIS AN AUTO ACCIDENT?    YES ☐ NO ☒ | WHEN DID THE ACCIDENT OCCUR? (DATE/TIME) |
|---|---|---|

| 8. WHERE DID THE ACCIDENT OCCUR? (CITY AND STATE) | WERE YOU AT WORK WHEN THE ACCIDENT OCCURRED?    YES ☐ NO ☐ |
|---|---|

| 9. BRIEF DESCRIPTION OF THE ACCIDENT |
|---|

I hereby authorize the physician to release any information requested with respect to this claim. I certify that the information furnished to me in support of the claim is true and correct.

_Ronald Hancock_      6-10-03

EMPLOYEE SIGNATURE            DATE

1

# SECTION ②: TO BE COMPLETED BY THE EMPLOYER:

When completing the Employer portion of the form, please complete Line 3 if the disabled employee is covered under the Beneflex Short-Term Disability Plan; complete Line 4 if the disabled employee is covered under an Hourly Union Short-Term Disability Plan or any other Dana Non-Beneflex Short-Term Disability Plan.

| 1. EMPLOYEE NAME | | | SOCIAL SECURITY NUMBER | | PEOPLESOFT EMPLOYEE ID | |
|---|---|---|---|---|---|---|
| 2. OCCUPATION | | HOURLY RATE | | HIRE DATE | | DATE OF BIRTH |

| 3. BENEFLEX | AMOUNT OF WEEKLY DISABILITY BENEFIT | OPTION NUMBER | STD PERCENTAGE | PAYROLL DEDUCTION | EFFECTIVE DATE OF COVERAGE |
|---|---|---|---|---|---|
| | | 1 ☐ | 50% ☐ | PRE-TAX ☐  POST-TAX ☐ | |
| | | 2 ☐ | 70% ☐ | | |

| 4. NON-BENEFLEX | AMOUNT OF WEEKLY DISABILITY BENEFIT | PERCENTAGE OF COVERAGE (IF APPLICABLE) | EFFECTIVE DATE OF COVERAGE |
|---|---|---|---|

| 5. LAST DAY WORKED | DATE EXPECTED TO RETURN | IF SALARY CONTINUATION, GIVE SALARY AMOUNT AND DATE PAID THROUGH |
|---|---|---|

6. DID THIS DISABILITY ARISE OUT OF PATIENT'S EMPLOYMENT? YES ☐   NO ☐

[IF YES, ATTACH REIMBURSEMENT AGREEMENT SIGNED BY THE EMPLOYEE AND SHOW WORKER'S COMPENSATION COMPUTATION BELOW.]

## WORKER'S COMPENSATION

| 7. WEEKLY RATE OF WORKER'S COMPENSATION BENEFIT | TOTAL AMOUNT OF WORKER'S COMPENSATION PAID TO DATE | PERIOD COVERED |
|---|---|---|

| 8. ARE WORKER'S COMPENSATION BENEFITS BEING CONTINUED? | STATE WORKER'S COMPENSATION LAW WAITING PERIOD (DAYS) | FROM_____ TO AND INCLUDING_____ STATE WORKER'S COMPENSATION LAW RETROACTIVE PERIOD |
|---|---|---|
| YES ☐   NO ☐ | | DAYS_____   WEEKS_____ |

ADDITIONAL COMMENTS:

COMPLETED BY (PRINT NAME)                                          TITLE

SIGNATURE OF HUMAN RESOURCES REPRESENTATIVE APPROVING CLAIM                 DATE

2

## SECTION ❸:   TO BE COMPLETED BY THE ATTENDING PHYSICIAN:

PATIENT'S NAME  _Ronald Hancock_     AGE  _59_

NATURE OF DISABILITY (DESCRIBE COMPLICATIONS IF ANY)
_Hx of adenocarcinoma of the rectum._
_Explosive diarrhea — complication of surgery/Iradiation_

IS CONDITION DUE TO PREGNANCY?    DATE OF CONCEPTION    EXPECTED DATE OF DELIVERY

YES ☐  NO ☒

DID THIS DISABILITY ARISE OUT OF PATIENT'S EMPLOYMENT?   YES ☐  NO ☒  (IF YES, PLEASE EXPLAIN)

DOES THIS CONDITION TOTALLY PREVENT THE PATIENT FROM PERFORMING THE DUTIES OF HIS/HER OCCUPATION?

NATURE OF SURGICAL OR OBSTETRICAL PROCEDURE, IF ANY (DESCRIBE FULLY)

YES ☒  NO ☐

DATE SURGICAL OR OBSTETRICAL PROCEDURE WAS PERFORMED    WHERE PERFORMED

HOSPITAL ☐  OFFICE ☐

GIVE DATES OF TREATMENTS

OFFICE _12/98 — 12/99  Chemotherapy_

HOME

INPATIENT HOSPITAL _4/09/99 — 4/18/99_

OUTPATIENT HOSPITAL

WAS AN ACCIDENT INVOLVED?        WAS THIS AN AUTO ACCIDENT?       WHEN DID THE ACCIDENT OCCUR? (DATE/TIME)

YES ☐  NO ☒        YES ☐  NO ☒

BRIEF DESCRIPTION OF THE ACCIDENT

THE PATIENT HAS BEEN CONTINUOUSLY DISABLED (UNABLE TO WORK)

THE PATIENT WAS OR WILL BE ABLE TO RETURN TO WORK (AN EXPECTED RETURN TO WORK IS REQUIRED, BENEFITS CANNOT COMMENCE WITHOUT COMPLETING THIS QUESTION)

FROM _May 2003_ TO _Present_     DATE _Will reevaluate Sept 2003_

PHYSICIAN REMARKS:
_Patient has explosive diarrhea which is interfering with his day to day activities as well as his job._

NAME OF PHYSICIAN (PLEASE PRINT)  _Dr. David G. Morrison_

ADDRESS  _2055 E. So Blvd, Montg, Al 36116_

PHYSICIAN SIGNATURE

DATE _6/10/03_    TELEPHONE NUMBER (WITH AREA CODE) _334-281-7710_

3

# SECTION ②:  TO BE COMPLETED BY THE EMPLOYER:

When completing the Employer portion of the form, please complete Line 3 if the disabled employee is covered under the Beneflex Short-Term Disability Plan; complete Line 4 if the disabled employee is covered under an Hourly Union Short-Term Disability Plan or any other Dana Non-Beneflex Short-Term Disability Plan.

| 1. EMPLOYEE NAME | | SOCIAL SECURITY NUMBER | | PEOPLESOFT EMPLOYEE ID | |
|---|---|---|---|---|---|
| 2. OCCUPATION | | HOURLY RATE | HIRE DATE | | DATE OF BIRTH |

| 3. *BENEFLEX* | AMOUNT OF WEEKLY DISABILITY BENEFIT | OPTION NUMBER | STD PERCENTAGE | PAYROLL DEDUCTION | EFFECTIVE DATE OF COVERAGE |
|---|---|---|---|---|---|
| | | 1 ☐ | 50% ☐ | | |
| | | 2 ☐ | 70% ☐ | PRE-TAX ☐  POST-TAX ☐ | |

| 4. *NON-BENEFLEX* | AMOUNT OF WEEKLY DISABILITY BENEFIT | PERCENTAGE OF COVERAGE (IF APPLICABLE) | EFFECTIVE DATE OF COVERAGE |
|---|---|---|---|

| 5. LAST DAY WORKED | DATE EXPECTED TO RETURN | IF SALARY CONTINUATION, GIVE SALARY AMOUNT AND DATE PAID THROUGH |
|---|---|---|

6. DID THIS DISABILITY ARISE OUT OF PATIENT'S EMPLOYMENT? YES ☐   NO ☐

(IF YES, ATTACH REIMBURSEMENT AGREEMENT SIGNED BY THE EMPLOYEE AND SHOW WORKER'S COMPENSATION COMPUTATION BELOW)

## WORKER'S COMPENSATION

| 7. WEEKLY RATE OF WORKER'S COMPENSATION BENEFIT | TOTAL AMOUNT OF WORKER'S COMPENSATION PAID TO DATE | PERIOD COVERED |
|---|---|---|
| 8. ARE WORKER'S COMPENSATION BENEFITS BEING CONTINUED? | STATE WORKER'S COMPENSATION LAW WAITING PERIOD (DAYS) | FROM_____ TO AND INCLUDING_____ STATE WORKER'S COMPENSATION LAW RETROACTIVE PERIOD |
| YES ☐  NO ☐ | | DAYS_____ WEEKS_____ |

ADDITIONAL COMMENTS:

| COMPLETED BY (PRINT NAME) | TITLE |
|---|---|

| SIGNATURE OF HUMAN RESOURCES REPRESENTATIVE APPROVING CLAIM | DATE |
|---|---|

2

## Physician's Statement

I certify that (name)      Ronald      I Hancock

was permanently and totally disabled on January 1, 1976 or January 1, 1977,

OR was permanently and totally disabled on the date he or she retired.

If retired after 1976, enter the date retired  . . . . . . . . . . . . . . . . . ▶ 5/28/03

Physician: Sign your name on  EITHER line A or B below.

A.  The disability has lasted or can be
    expected to last continuously for
    at least a year . . . . . . . . . . . . . . . . . . . . . . . .    Physician's signature          Date

B.  There is no reasonable probability
    that the disabled condition will
    ever improve . . . . . . . . . . . . . . . . . . . . . . .    _Charles D Cloutier_  5/21/04
                                                                  Physician's signature          Date

Phys. name:  _Charles Cloutier MD_  Phys. addr: _461 E Main  Prattville AL_

### END OF PAGE 3

## Physician's Statement

**Physician's Statement**

I certify that (name)    Ronald    I Hancock

was permanently and totally disabled on January 1, 1976 or January 1, 1977,

OR was permanently and totally disabled on the date he or she retired.

If retired after 1976, enter the date retired  .................  ▶ 5/28/03

Physician: Sign your name on **EITHER** line A or B below.

A. The disability has lasted or can be
   expected to last continuously for
   at least a year .........................

B. There is no reasonable probability
   that the disabled condition will
   ever improve ........................

Physician's signature    Date

*David G Morrison MD* 7/12/04

Physician's signature    Date

Phys. name: DAVID MORRISON  Phys. addr: 2055 EAST South Blvd

Mont AL 36116

END OF PAGE 3

**Physician's Statement**

SHUMAKER, LOOP & KENDRICK, LLP

NORTH COURTHOUSE SQUARE
1000 JACKSON
TOLEDO, OHIO 43624-1573
TELEPHONE (419) 241-9000
FAX (419) 241-6894

ERIC D. BRITTON
(419) 321-1348
ebritton@slk-law.com

OTHER OFFICE LOCATIONS:
CHARLOTTE
COLUMBUS
TAMPA

October 19, 2004

Ron Hancock
7073 Narrow Lane Road
Montgomery, Alabama 36116

Kenneth Shinbaum, Esq.
McPhillips, Shinbaum & Gill. LLP
516 South Perry Street
Montgomery, Alabama 36104

Re:     Dana Corporation – Appeal of Long Term Disability
        Our File No. 44143/105

Dear Mr. Hancock:

The Dana Welfare Benefit Plans Committee considered your appeal at its October 13, 2004 meeting, and has decided that your claim for Dana long-term disability benefits was properly denied. The Committee asked me to provide you and your attorney with this letter explaining the basis for this decision.

Your claim for disability benefits was denied because (i) you had not qualified for long-term disability benefits by the time your employment with Dana terminated with the sale of the Engine Management Group to Standard Motor Products, and (ii) the agreement negotiated between Dana and Standard Motor Products covering this sale provided that Standard Motor Products would be responsible for providing your welfare benefits on and after July 1, 2003.

The Committee reviewed the correspondence from your attorney and the relevant terms of Dana's Long-Term Disability Plan, as well as the February 2003 Asset Purchase Agreement between Dana and Standard Motor Products. In particular, Section 6(a) of Dana's Long-term Disability Benefits Plan provides that eligibility for Dana long-term disability coverage ends at the termination of employment with Dana:

"An Eligible Employee's eligibility for the long-term disability benefits provided under this Plan shall automatically cease on the date of termination of employment. In the case of an Employee's absence from active work because of sickness or injury, his employment may, for purposes of his long term disability benefits, be deemed to continue until terminated by Dana, or until he retires. In the case of the above exceptions, long-term disability benefits for such Eligible Employee shall automatically cease on the date

Ron Hancock
Kenneth Shinbaum, Esq.
October 19, 2004
Page 2

such termination of his employment by Dana occurs, or on the date he retires."

The Committee confirmed that you were properly treated as a "Transferred Employee" under Section 11.1 of the Asset Purchase Agreement, even though you were on leave at the date of the sale to Standard Motor Products. Under the Agreement with Standard Motor Products, you became a Standard Motor Products employee on the date the sale closed. Dana's payroll records are consistent with this termination date, and show that your employment with Dana was terminated on the date of the sale to Standard Motor Products. The Committee has not been presented with any evidence that your employment with Dana continued after July 1, 2003.

Your appeal stated that you became disabled on or about May 28, 2003, and your attorney included copies of the application forms you submitted in June, 2003. These forms, however, all relate to your short-term disability benefits from Dana. Dana's long-term disability plan is a completely separate plan from its short-term disability benefits (with its own administrator and application forms). Since your disability began in May 2003, the Committee determined that you could not have qualified for long-term disability benefits until you had satisfied the waiting period under the Long-Term Disability Benefits Plan, by exhausting your short-term benefits. Based on your application forms, this would not have occurred any earlier than November 2003, and did not occur by June 30, 2003.

Your appeal also sought coverage under the Dana group health plan. This must be denied for similar reasons. Your grounds for claiming eligibility for continued health plan coverage appear to depend directly upon your claimed status as a disabled participant. Dana does make active employee group health coverage available to persons who qualify for long-term disability benefits from Dana. The Committee has determined that since your claim for long-term disability benefits has been denied, your coverage under Dana's group health plan also properly ended on June 30, 2003, when you were transferred to employment with Standard Motor Products and were enrolled in SMP's benefit plans. The Committee is not aware of any election to purchase COBRA continuation coverage or any other reason that your coverage under Dana's health plan should have continued after June 30, 2003.

Despite the various arguments your attorney presented on your behalf, nothing in the record before the Committee shows either that (i) your employment with Dana continued after July 1, 2003, or (ii) that you had satisfied the waiting period for long-term disability benefits under Dana's disability benefits plan by that date. On this basis, the Committee has no choice but to conclude that you never qualified for long-term disability benefits from Dana's long-term disability plan, and must uphold the original denial.