# ASSET PURCHASE AGREEMENT

by and among

Dana Corporation
and
Certain of its Subsidiaries
*as Sellers*

and

Standard Motor Products, Inc.
*as Buyer*

Providing for the Sale of Substantially all of the Assets of
Dana's Engine Management Business

Dated as of February 7, 2003

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*"), dated as of February 7, 2003, by and among DANA CORPORATION, a Virginia corporation ("*Dana*"), AUTOMOTIVE CONTROLS CORP., a Connecticut corporation, BWD AUTOMOTIVE CORPORATION, a Delaware corporation, PACER INDUSTRIES, INC., a Missouri corporation, RISTANCE CORPORATION, an Indiana corporation, ENGINE CONTROLS DISTRIBUTION SERVICES, INC., a Delaware corporation (each a "*Seller*" and, collectively, "*Sellers*"), and STANDARD MOTOR PRODUCTS, INC., a New York corporation ("*Buyer*"). Buyer and Sellers are referred to collectively herein as the "*Parties*." Capitalized terms are used herein with the meanings assigned those terms in Appendix A hereto.

### RECITALS:

A.    Sellers, by and through Dana's Engine Management Group, have been engaged in the business of manufacturing and distributing certain aftermarket parts for the passenger car and light vehicle markets in the United States.

B.    Buyer desires to purchase from Sellers, upon the terms and subject to the conditions set forth in this Agreement, substantially all of the assets, properties, rights and interests of Sellers in the EMG Business (more particularly identified herein as the Acquired Assets), and Sellers desire to sell the Acquired Assets to Buyer in consideration of certain payments by Buyer and the assumption by Buyer of certain liabilities and obligations of Sellers, on the terms and conditions contained in this Agreement and the other agreements contemplated hereby.

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, and subject to the terms and conditions set forth herein, Sellers and Buyer hereby agree as follows:

### ARTICLE I

### PURCHASE AND SALE OF ASSETS

**1.1    Sale and Transfer of Assets.** At the Closing and effective as of the Closing Date, Sellers shall, and shall cause their Affiliates to, sell, assign, convey, transfer and deliver to Buyer, and Buyer shall purchase and acquire from Sellers and such Affiliates, subject only to Permitted Liens, all right, title and interest of Sellers and such Affiliates in and to all of the assets and properties owned, used, occupied or held by or for the benefit of Sellers and such Affiliates primarily in the operation of, or otherwise relating primarily to, the EMG Business, excluding only the Retained Assets (the "*Acquired Assets*"), which Acquired Assets include, by way of example and not limitation, the following:

(a)    *Leased Real Property.* All of Sellers' right, title and interest in, to and under the leases listed on Schedule 1.1(a) (the "*Real Estate Leases*") and, to the extent covered

by such leases, any and all buildings, structures, improvements and fixtures located on the real property covered by such leases.

(b) *Fixed Assets.* All of Sellers' right, title and interest in the machinery and equipment, furniture, automobiles, trucks, tractors, trailers, tools, jigs, dies and other tangible personal property used primarily in the EMG Business (the "***Fixed Assets***").

(c) *Inventory.* All inventories and supplies of raw materials, work-in-process, finished goods, spare parts, supplies, storeroom contents and other inventoried items owned or held by or on behalf of Sellers relating primarily to the EMG Business.

(d) *Lockbox.* Sellers' lockbox number 93307 with Bank One, N.A., but excluding the account number currently associated with such lockbox number (the "***Franklin Park Lockbox***").

(e) *Accounts Receivable.* All trade accounts receivable of the EMG Business and of the portion of the Retained Business Lines relating to fuel pumps and water pumps, other than those retained under Section 1.2(b) (the "***Accounts Receivable***").

(f) *Prepaid Amounts.* All deposits and prepayments, to the extent related to the EMG Business.

(g) *Contracts.* All rights and incidents of interest of, and benefits accruing to, Sellers in and to or arising out of all Contracts entered into by any Seller, but only to the extent such Contracts relate to the EMG Business (the "***Acquired Contracts***"), including the Contracts listed on Schedule 1.1(g).

(h) *Purchase Orders.* All open purchase and sales orders, but only to the extent such Contracts relate to the EMG Business (the "***Purchase Orders***").

(i) *Intellectual Property.* All Intellectual Property owned or used by a Seller in connection with the EMG Business (the "***Acquired Intellectual Property***"), including the registered Intellectual Property and the trade names and brand names listed on Schedule 1.1(i), and all rights thereunder, remedies against infringement thereof, and rights to protection of interests therein.

(j) *Permits.* To the extent transferable under applicable Law, all franchises, registrations, certificates, variances, permits, licenses, authorizations, approvals and similar rights obtained, issued or granted to any Seller by any Governmental Authority related primarily to the EMG Business (the "***Permits***").

(k) *Books and Records.* All books and records (or true and correct copies thereof), including all computerized books and records and all Contracts, files, documents, lists, plats, correspondence, architectural plans, drawings and specifications, invoices, forms, customer records, promotional and advertising materials, technical data, operating records, operating manuals, instructional documents, employee files (to the extent permitted under applicable Law) and other printed or written materials, in each case, to the extent related to the EMG Business.

(l) *Warranties.* All rights under or pursuant to all warranties, representations and guarantees, whether express or implied, made by suppliers, manufacturers, contractors and other third parties with respect to any of the Acquired Assets.

(m) *Claims and Causes of Action.* All claims, defenses, causes of action, choses in action, rights of recovery, rights of set off, and rights of recoupment related to the EMG Business or the Acquired Assets or Assumed Liabilities, excluding, however, any claims or rights under the insurance policies described in Section 1.2(i) and excluding any of the foregoing that relate to any Retained Assets or Retained Liabilities.

(n) *Real Property.* All of Sellers' right, title and interest in and to the real property described on Schedule 1.1(n), and all buildings, structures, improvements, and fixtures located thereon (the "*Owned Real Property*"), except as otherwise provided in Section 3.3(b).

(o) *Other Intangible Assets.* The EMG Business as carried on and conducted by Sellers as a going concern, including any and all goodwill and similar intangible assets associated therewith and all customer lists, supplier lists, catalogues, sales brochures and other marketing data.

**1.2   Retained Assets.** Sellers shall retain the following assets only (collectively, the "*Retained Assets*") and Buyer will in no way be construed to have purchased or acquired (or to be obligated to purchase or to acquire) any interest whatsoever in any such Retained Assets:

(a) *Cash and Cash Equivalents.* Any cash, cash equivalents, marketable securities, deposit accounts, payroll accounts, lockboxes (other than the Franklin Park Lockbox) and investment accounts of Sellers.

(b) *Retained Accounts Receivable.* All trade accounts receivable owed to a Seller by any other Seller or by any Affiliate of any Seller and all trade accounts receivable of the EMG Business that have been sold to Dana Asset Funding L.L.C. on or prior to December 31, 2002.

(c) *Retained Real Property.* All right, title and interest of any Seller in (i) any Owned Real Property retained by Sellers and leased to Buyer pursuant to Section 3.3(b) and (ii) the Branford Rental Properties.

(d) *Contracts.* All Contracts of Sellers other than those described in Sections 1.1(a), 1.1(g) and 1.1(h), including those Contracts listed on Schedule 1.2(d).

(e) *Retained Business Lines.* All right, title and interests of any Seller in and to the Retained Business Lines and all buildings, land, inventory, machinery, equipment and other assets used primarily in the Retained Business Lines, including, without limitation, those listed on Schedule 1.2(e).

(f) *Former EMG Facilities.* All right, title and interests of any Seller in the buildings, land, machinery and equipment and other personal property located at the Former EMG Facilities.

(g) *Other Assets.* All assets not used primarily in the EMG Business and all assets of Sellers exclusively used in businesses of Sellers other than the EMG Business, including all rights (beyond those provided to Buyer under Section 7.14) to the Dana name or any derivation thereof.

(h) *Other Retained Assets.* The assets identified on Schedule 1.2(h).

(i) *Insurance Policies.* All insurance policies of Sellers and their Affiliates and all rights, including any prepayments or deposits, thereunder.

(j) *Employee Benefits Plans.* All Seller Benefit Arrangements and all Seller ERISA Plans.

(k) *Retained Records.* All books, records and other data that relate to the Retained Assets or the Retained Liabilities and all books, records and other data that Sellers are required by Law to retain.

(l) *Tax Refunds.* All rights or claims to refunds or credits relating to Taxes paid by any Sellers.

**1.3    Nonassignable Assets; Beneficial Ownership.**

(a) Notwithstanding any provision in this Agreement to the contrary, this Article I does not constitute an agreement to assign, transfer or convey any of the Acquired Assets that are not capable of being validly sold, assigned, transferred or conveyed without the Consent of any third party and which Consent is not obtained on or prior to the Closing Date (a "*Nonassignable Asset*").

(b) Subject to Section 7.9(b) hereof, to the extent that any conveyances, assignments, transfers and deliveries contemplated by this Agreement have not occurred as of the Closing Date, Sellers and Buyer shall cooperate to effect such action as promptly thereafter as is practicable. Notwithstanding the foregoing, neither Sellers nor Buyer will be liable in any manner to any Person who is not a party to this Agreement for any failure of any of the transfers contemplated by this Agreement to be consummated on or subsequent to the Closing Date. Whether or not all of the Acquired Assets or the Assumed Liabilities have been legally transferred to or assumed by Buyer as of the Closing Date, Buyer will have, and will be deemed to have acquired, complete and sole beneficial ownership over all of the Acquired Assets, including any Nonassignable Assets, together with all of Sellers' rights, powers and privileges incident thereto, and Buyer will be deemed to have assumed in accordance with the terms of this Agreement all of the Assumed Liabilities and all of Sellers' Liabilities, duties, obligations and responsibilities incident thereto.

(c) Nothing in this Section 1.3 shall be construed to waive or modify any right of Buyer to require a Consent set forth on Schedule 4.2(p) as a condition to Buyer's obligation to consummate the transactions contemplated by this Agreement.

## ARTICLE II

## ASSUMPTION OF LIABILITIES

**2.1** **Assumed Liabilities.** At the Closing and effective as of the Closing Date, on and subject to the terms and conditions of this Agreement, Buyer shall assume and thereafter perform, pay and discharge in accordance with their terms only the following Liabilities of Sellers relating to the EMG Business (collectively, the "*Assumed Liabilities*"):

(a) *Final Net Book Value Statement.* All Liabilities reflected on the Final Net Book Value Statement.

(b) *Real Estate Leases.* All Liabilities arising under the Real Estate Leases.

(c) *Trade Payables.* All Liabilities for trade accounts payable of the EMG Business and all Liabilities for trade accounts payable, outstanding on the Closing Date, of the portion of the Retained Business Lines relating to fuel pumps and water pumps, to the extent such trade accounts payable are reflected on the Final Net Book Value Statement (the "*Trade Payables*").

(d) *Contracts.* All Liabilities arising under the Purchase Orders and the Acquired Contracts.

(e) *Employment Liabilities.* All Liabilities arising out of the employment of the Transferred Employees (including accrued compensation and vacation) except only those Liabilities to be retained by Sellers or paid by Sellers pursuant to Article XI of this Agreement.

(f) *Workers' Compensation and Other Employee Claims.* (i) All Liabilities resulting from workers' compensation claims asserted by any Transferred Employee relating to accidents or incidents occurring on or after the Closing Date, including any occupational disease losses and any recurrences (as distinct from reaggravations) of any prior injuries, (or if such accident or incident is of a recurring or continuing nature that commenced prior to the Closing Date, a pro rata portion of such Liability based on the ratio of the number of days that such Transferred Employee was employed by Buyer while such accident or incident continued to the total number of days that such accident or incident continued), (ii) all Liabilities for claims (other than those arising from such workers' compensation claims) asserted by any Transferred Employee on or after the Closing Date and relating to an event or action that occurs on or after the Closing Date (or if such claim is made prior to December 31, 2004 and such event or action is of a recurring or continuing nature that commenced prior to the Closing Date, a pro rata portion of such Liability based on the ratio of the number of days that such Transferred Employee was employed by Buyer while such event or action continued to the total number of days that such event or action continued), and (iii) all Liabilities for claims (other than those arising from workers' compensation claims) asserted by any Transferred Employee after December 31, 2004 and relating to an event or action that occurred prior to the Closing Date.

(g) *Warranties and Sales Returns.* All Liabilities for product warranties, product recalls, refunds or sales returns, repair or replacement and all performance guarantees

**10.6   Tax and Insurance.** The amount of any Damages suffered by an Indemnified Party is to be reduced by any net federal Tax, insurance or other benefits that such party receives in respect of or as a result of such Damages or the facts or circumstances relating thereto. A 34% tax rate is to be used in computing any such reduction for net federal Tax benefits. If any Damages for which indemnification is provided hereunder are subsequently reduced by any net tax benefit, insurance payment or other recovery from a third party, the Indemnified Party shall promptly remit the amount of such reduction to the Indemnifying Party.

**ARTICLE XI**

**EMPLOYEE BENEFIT MATTERS**

**11.1   Employment.** Buyer shall make offers of employment to, and employ for a period of not less than two months after the Closing Date, on the terms required by this Article XI, all individuals who are employed in the EMG Business immediately prior to the Closing Date and who accept such offers of employment, including, to the extent set forth in Section 11.5, those individuals who are on lay-off, leave of absence, disability leave or elect to retire immediately prior to the Closing Date (collectively, those employees who accept employment with Buyer as of the Closing Date shall collectively be referred to herein as the "*Transferred Employees*"); provided that, (a) except as otherwise required by the Employee Retention Incentive Agreements, Buyer will not be required to continue to employ any Transferred Employee who resigns or otherwise voluntarily terminates his employment by Buyer or who is terminated by Buyer for cause, (b) Buyer shall not make offers of employment to the individuals identified on Schedule 11.1 whom Sellers desire to retain after the Closing Date and such individuals shall not be considered "Transferred Employees".

**11.2   Compensation and Employee Benefits.**

(a)   *In General.* Buyer shall provide each Transferred Employee, so long as he or she otherwise remains employed by Buyer, with compensation, employee benefits and severance programs that, in the aggregate, are substantially equivalent to those provided by Buyer immediately prior to the Closing Date to Buyer's employees serving in comparable capacities and with comparable years of service. Subject to the foregoing, the other provisions of this Article XI and the provisions of the Employee Retention Incentive Agreements, Buyer shall have the right to determine the compensation and employee benefits of the Transferred Employees.

(b)   *Severance Payments.* Buyer and Sellers will be obligated for severance payments to Transferred Employees as provided in the Reimbursement Agreement except that Exhibit III of that letter shall be amended as set forth on Schedule 11.2(b). Sellers shall be liable for and shall pay all eligible individuals employed by the EMG Business prior to the Closing severance benefits in accordance with the terms of Seller's severance policies; provided, however, that nothing in this Agreement should be construed to obligate Sellers to pay severance to any Transferred Employee or any employee of the EMG Business who is made an offer of employment by Buyer, except as provided in the Reimbursement Agreement. Seller shall also reimburse Buyer for all severance costs incurred by Buyer, up to an aggregate cumulative amount of $400,000, in connection with any Transferred Employee who was an

employee of Sellers' RAM Division on the Closing Date who is terminated by Buyer within six months after the Closing Date because of the closing or relocation of the operations of the RAM Division.

(c)     *Service Credit*.  For purposes of any employee benefit plan, program or arrangement established for or made available to Transferred Employees by Buyer (the "***Buyer Plans***"), other than Buyer's post-retirement medical benefit plan, Buyer shall credit such Transferred Employees with service for all periods of service prior to the Closing Date with Sellers or any Affiliate of Sellers.  Such service will be credited for purposes of determining eligibility for, vesting in and the amount of benefits under all of the Buyer Plans and for all other purposes for which service is either taken into account or recognized; provided, however, that such service need not be credited to the extent it would result in duplication of coverage or benefits.

(d)     *Welfare Benefit Plans*.  Coverage for all Transferred Employees and their respective dependents under the Seller ERISA Plans and Seller Benefit Arrangements that are welfare benefit plans within the meaning of Section 3(1) of ERISA (the "***Seller Welfare Plans***"), will terminate effective as of the day immediately prior to the Closing Date.  All Liabilities of Sellers under the Seller Welfare Plans prior to the effective date of such termination shall be Retained Liabilities.  The Buyer Plans that are welfare benefit plans within the meaning of Section 3(1) of ERISA (the "***Buyer Welfare Plans***") shall provide coverage and benefits to Transferred Employees (and the eligible dependents of the Transferred Employees) beginning on the Closing Date.  Buyer shall cause deductibles and out-of-pocket payments expended for coverage under the Seller Welfare Plans in the plan year in which the Closing Date occurs to be counted toward the deductibles and out-of-pocket maximums applicable to each Transferred Employee under the Buyer Welfare Plans.  Sellers will provide Buyer, at Buyer's expense, with electronic or other copies of existing records regarding each Transferred Employee's status regarding deductibles and out-of-pocket expenses under the Seller Welfare Plans (it being understood that Sellers will not be required to generate any reports or provide any other information that it did not produce or maintain in the Ordinary Course of Business).  In addition, no pre-existing condition, limitation, exclusion or waiting period applicable with respect to any Buyer Welfare Plan will apply to any Transferred Employee.

(e)     *Savings and Pension Plans*.

(i)     Effective as of the Closing Date, Sellers will cause all Transferred Employees to become fully vested in their account balances under the Dana Corporation Employee Incentive and Savings Investment Plan (the "***Savings Plan***") and their accrued benefits under the Pension Plan for Dana Automotive Aftermarket Group Employees (the "***Pension Plan***").  All Liabilities of Sellers under the Savings Plan and the Pension Plan shall be Retained Liabilities.

(ii)    With respect to each Transferred Employee who has an outstanding loan under the Savings Plan, Buyer and Sellers shall take such action as shall be necessary to permit such Transferred Employee to rollover such loan to the applicable Buyer Plan.

**11.3  COBRA; Retiree Medical Benefits.** Buyer shall have sole responsibility for "continuation coverage" benefits provided after the Closing Date under Buyer's group health plans to all Transferred Employees, and "qualified beneficiaries" of Transferred Employees, for whom a "qualifying event" occurs on or after the Closing Date. Sellers shall have the sole responsibility for "continuation coverage" benefits provided under Sellers' group health plans to all employees of Sellers, and "qualified beneficiaries" of employees of Sellers, for whom a "qualifying event" has occurred prior to the Closing Date, or for any such individual who is not a Transferred Employee or "qualified beneficiary" with respect to a Transferred Employee, regardless of when such "qualifying event" occurs, and the obligations of Sellers under this sentence shall be Retained Liabilities. The terms "continuation coverage," "qualified beneficiaries" and "qualifying event" shall have the meaning ascribed to them under Section 4980B of the Code and Sections 601-608 of ERISA.

**11.4  WARN Act.** Buyer shall not engage in a "mass layoff" or "plant closing" as defined in the United States Worker Adjustment and Retraining Notification Act (the "*WARN Act*") affecting the Transferred Employees without complying with the WARN Act. Buyer shall defend, indemnify and hold harmless Sellers and their Related Persons from any claims, charges, suits, demands, damage, or liability arising out of or relating to any such noncompliance with the WARN Act from and after the Closing Date.

**11.5  Non-Active Employees.** Except as expressly provided below, Buyer shall make offers of employment to, and shall employ to the extent such offers are accepted, the individuals employed in the EMG Business who are on non-active status on the Closing Date due to lay-off, leave of absence or disability (the "*Non-Active Employees*"). Notwithstanding the foregoing, Sellers shall retain as their employees any Non-Active Employees listed on Schedule 11.5 who are on long-term disability leave on the Closing Date and any other Non-Active Employees who are on long-term disability leave on the Closing Date, up to a maximum of sixteen (16) such employees. In consideration of Seller's agreement to retain such employees, Buyer shall pay to Sellers, on the Closing Date and subject to the contemporaneous consummation of the transactions contemplated by this Agreement, the sum of Five Hundred Thousand Dollars ($500,000) by wire transfer of immediately available funds to an account designated by Dana.

**ARTICLE XII**

**TERMINATION**

**12.1  Termination.** Notwithstanding any other provision of this Agreement, this Agreement may be terminated at any time prior to the Closing Date:

(a)  by mutual written consent of Buyer and Dana;

(b)  by Buyer, if a Seller has committed a material breach of any representation, warranty or covenant of Sellers in this Agreement and such breach is either not capable of being cured or if such Seller has failed to cure such breach within 30 days after written notice thereof from Buyer;

IN WITNESS WHEREOF, Buyer and Sellers have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

**BUYER:**

**STANDARD MOTOR PRODUCTS, INC.**

By:_____
Name:
Title:

**SELLERS:**

| | |
|---|---|
| **DANA CORPORATION** | **BWD AUTOMOTIVE CORPORATION** |
| By: *Terry R McCormack* <br> Name: <br> Title: | By: *Terry R McCormack* <br> Name: <br> Title: |
| **AUTOMOTIVE CONTROLS CORP.** | **RISTANCE CORPORATION** |
| By: *Terry R McCormack* <br> Name: <br> Title: | By: *Terry R McCormack* <br> Name: <br> Title: |
| **PACER INDUSTRIES, INC.** | **ENGINE CONTROLS DISTRIBUTION SERVICES, INC.** |
| By: *Terry R McCormack* <br> Name: <br> Title: | By: *Terry R McCormack* <br> Name: <br> Title: |

IN WITNESS WHEREOF, Buyer and Sellers have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

**BUYER:**

**STANDARD MOTOR PRODUCTS, INC.**

By: /s/ James Burke
Name: JAMES BURKE
Title: VP FINANCE, CFO

**SELLERS:**

| **DANA CORPORATION** | **BWD AUTOMOTIVE CORPORATION** |
|---|---|
| By:_____ | By:_____ |
| Name: | Name: |
| Title: | Title:. |

**AUTOMOTIVE CONTROLS CORP.**    **RISTANCE CORPORATION**

By:_____
Name:
Title:

By:_____
Name:
Title:

**PACER INDUSTRIES, INC.**    **ENGINE CONTROLS DISTRIBUTION SERVICES, INC.**

By:_____
Name:
Title:

By:_____
Name:
Title:

## Schedule 11.5

### Certain Non-Active Employees

1. Cannon, C.E.
2. Nichols, Sharon L.
3. Haberly, Paula R.
4. Miller, Laura L.
5. DeVore, Sandra K.
6. Henderson, Ann
7. Roller, Karlyn K.
8. Grossman, Peggy A.
9. Hooker, Karen M.
10. Jones, William H.
11. Heyden, Arthur E.
12. Harris-White, Kimberly
13. Renkewitz, Sherry
14. Henisey, Connie J.
15. DeVos, Mary H.
16. Baker, Eugene